```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ANGELA WALSH,                         :
                                      :
     Plaintiff,                       :
                                      :
     v.                               :   CASE NO. 3:08CV1905(DFM)
                                      :
CITY OF NORWALK                       :
                                      :
     Defendant.                       :
```

RULING ON MOTION FOR SUMMARY JUDGMENT

This is a case brought under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq. Pending before the court is the defendant's Motion for Summary Judgment (doc. #28).

I.   Procedural History

The plaintiff commenced this action in December 2008 after receiving right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO"). The plaintiff alleges that the defendant, her former employer, discriminated against her on the basis of her gender. (Doc. #1.) In February 2010, the parties consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73. (Doc. #19.)

II.  Factual Background

The following facts are undisputed.  The plaintiff became a member of the Norwalk Department of Police Services ("police department") in August 1976 and eventually achieved the rank of lieutenant.  (Doc. #28-6.)  From January 1996 to December 2004, the plaintiff worked for twelve bid periods[1] in Community Services, six bid periods in the Patrol Division, five bid periods in Special Services and then seven more bid periods in the Patrol Division.  (Doc. #35-1 at 4-6.)

In December 2004, while the plaintiff was working under Captain Rosemary Arway as a shift commander in the Patrol Division, Arway met with Deputy Chief Mark Palmer to discuss personnel assignments.  Following that discussion, Arway and Palmer recommended to Police Chief Harry Rilling that the plaintiff be transferred to another division.  (Doc. #28-19 at 2, #28-20 at 2.)  Chief Rilling concurred and planned to effect the transfer in January 2005.  (Doc. #28-18 at 3.)

Upon hearing of the proposed transfer, the plaintiff's husband, Captain Daniel Walsh, approached Chief Rilling to discuss it.  As a result of that conversation, Chief Rilling postponed the transfer.  (Id.)  The plaintiff telephoned Chief

---

[1] A "bid period" lasts four months.  (Doc. #28-18 at 2.) Three bid periods is equal to one year.

2

Rilling, and he informed her that she could remain in the Patrol Divison.  (Doc. #33-3 at 15.)

In September 2005, after two more bid periods in the Patrol Division, the plaintiff was transferred to Community Services.  (Doc. #28-18 at 4.)  She replaced Lieutenant Peter Randall, who wanted to leave Community Services.  (Doc. #33-1 at 12, #35-1 at 4-6.)  After two months, Chief Rilling offered to transfer the plaintiff back to the Patrol Division, and she accepted.  (Doc. #28-14, #28-18 at 5.)

The plaintiff alleges gender discrimination in the two-month transfer to Community Services.  She filed a grievance with the Norwalk Board of Police Commissioners, which was denied in November 2005.  (Docs. #28-10, #28-12.)  The plaintiff filed a separate grievance with the Connecticut Board of Mediation and Arbitration claiming that the union contract entitled her to choose her assignment based on seniority.  (Doc. #28-11.)  The board denied the claim in October 2008, ruling that the union contract entitled employees to their choice of "shift" on the basis of seniority but not to their choice of "position assignment."[2]  (Doc. #28-13.)  The plaintiff's gender discrimination claims with the CCHRO and the EEOC were denied in October and November of 2008, respectively.  (Doc. #1 at 14-15.)

---

[2]This decision mirrors the board's March 1998 decision on a similar grievance.  (Doc. #28-7 at 4-5.)

3

III. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] fact is 'material' if it 'might affect the outcome of the suit under the governing law.' . . . A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of establishing that there are no genuine issues of material fact.  Weinstock v. Columbia University, 224 F.3d 33, 41 (2d Cir. 2000).  Once such a showing is made, the non-movant must show that there is a genuine issue for trial.  Id.  The parties may support their assertions by either "(A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The court may rely only on admissible evidence; Spiegel v. Schulmann, 604 F.3d 72, 81 (2nd Cir. 2010); and must

4

view the evidence in the record in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor; Weinstock, 224 F.3d at 41.

IV. Discussion

    A.  Employment Discrimination Standard

Where there is no direct evidence of discrimination, Title VII claims are evaluated under the three-step burden-shifting analysis described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).[3]  See Johnson v. C. White & Son, Inc., 772 F. Supp. 2d 408, 413 (D. Conn. 2011).  The plaintiff first must establish a prima facie case by showing that (1) she is a member of a protected class; (2) she was qualified for the position he held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  McDonnell, 411 U.S. at 802.

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell, at 804).  If the

---

    [3]Because Connecticut law follows Title VII in all parts relevant to this matter, the analysis of the plaintiff's federal and state claims is the same.  See Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003).

employer is able to do so, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that employer's proffered reason was a pretext for discrimination. Id. "[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). The ultimate burden of persuasion "remains at all times with the plaintiff." Burdine, at 253.

   B.  Prima Facie Case

The defendant concedes that the plaintiff has shown prima facie that she is a member of a protected class, was qualified for the position she held and suffered an adverse employment action. However, the defendant argues that she has failed to make a prima facie showing of discriminatory intent. (Def.'s Mem., doc. #28-1 at 10.)

The evidence necessary for the plaintiff to satisfy this initial burden is de minimis. Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). "[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of Title VII analysis." Id. See, e.g., Gladwin v. Pozzi, 403 Fed. Appx. 603, 606 (2d

Cir. 2010) (affirming prima facie inference of race and gender discrimination where black female replaced by white male). Here, there is no dispute that the plaintiff, a female, was involuntarily transferred to Community Services to replace a male who wanted to leave that position. These circumstances give rise to a prima facie inference of discriminatory intent.

    C.   Showing of Discriminatory Intent

The defendant argues next that the plaintiff has failed to demonstrate that the defendant's justification for the adverse employment action was pretext.

The defendant maintains that it transferred the plaintiff to Community Services based on her performance as a commander in the Patrol Division. In support, the defendant submits the affidavits of Chief Rilling and former deputy chiefs Palmer and Arway. Arway's affidavit states that, in December 2004, she and Palmer recommended the plaintiff's removal from the Patrol Division "based on her performance in this position with, at all times, the goal of advancing the efficiency of the police department." (Doc. #28-20 at 2.) Arway later wrote in an email that the plaintiff "was transferred as a result of her ability (or inability) and not because of gender." (Doc. #28-16.) Palmer's affidavit concurs that, in December 2004, Arway characterized the plaintiff as a "disaster" who would call Arway at home to discuss matters that the plaintiff should have

7

handled herself.  Palmer "understood exactly what Captain Arway meant," and they recommended transfer on that basis.  (Doc. #35-1 at 1-2.)[4]  Finally, Chief Rilling's affidavit asserts that he understood the recommendation to be "the result of the performance and personality" of the plaintiff, and he agreed with their recommendation.  (Doc. #28-18 at 3.)  This evidence is sufficient to carry the defendant's burden of production.

The burden, therefore, lies with the plaintiff to prove that the defendant's justification is pretext.  She asserts that the police department had a longstanding practice of allowing lieutenants to choose their assignments based on seniority.  She also maintains that it was police department policy that officers should not be assigned outside of the Patrol Division for extended periods.  According to the plaintiff, her involuntary assignment back to Community Services, where she

---

[4]This affidavit was attached to the defendant's reply brief in response to the plaintiff's challenge to Arway's credibility in her opposition papers.  (See Pl.'s Mem., Doc. #33 at 18.) The Court's consideration of this document "is not improper or unfair to defendant because 'reply papers may properly address new material issues raised in the opposition papers . . . .'" Wesco Distribution, Inc. v. Anshelewitz, No. 06cv13444, 2008 WL 2775005, at *6 n.3 (S.D.N.Y. July 16, 2008) (quoting Bayway Refining Co. v. Oxygenated Marketing and Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) (consideration of evidence submitted with reply papers rather than with moving papers was proper because evidence was submitted in response to new argument made in opposition and because objecting party: 1) was not surprised by new evidence; 2) did not move for leave to file a sur-reply; and 3) did not claim to have any contrary evidence to introduce "even if it were given an opportunity to proffer it").

previously had spent four years, was inconsistent with these practices.  Additionally, the plaintiff contends that Chief Rilling assigned her to replace male Lieutenant Randall in Community Services simply because Randall preferred to move elsewhere.  Finally, the plaintiff contends that her performance in the Patrol Division could not have been subpar given her long tenure in the police department.

The evidence does not support the plaintiff's contentions.  Other than the plaintiff's conclusory statement, there is no evidence of a longstanding practice of allowing senior lieutenants their choice of assignment.  See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (conclusory allegation of practice and policy was insufficient to show the existence of genuine issue to be tried).  As indicated by the state mediation board's ruling on the plaintiff's grievance, police department employees were contractually entitled to bid their shift based on seniority but not their assignment.  Nor is there any evidence of the alleged policy prohibiting extended assignments outside of the Patrol Division[5] or of preferential treatment of Lieutenant Randall.

---

[5] It appears that in May 1996, the plaintiff's husband, Captain Daniel Walsh, wrote a memo to Police Chief Harry Rilling suggesting that it was in the best interests of the police department not to assign officers to positions outside of the Patrol Division for more than two to three years.  (Doc. #28-9.)

To the contrary, the evidence shows that the plaintiff and Lieutenant Randall both spent long periods in Community Services and relatively shorter periods in the Patrol Division. The plaintiff was the Community Services lieutenant for four years from 1996 to 1999. She subsequently spent two years as a shift commander in the Patrol Division, nearly two years in Special Services and then two more years in the Patrol Division before the transfer back to Community Services in September 2005. Similarly, Lieutenant Randall spent two years as a shift commander in the Patrol Division before being transferred to Community Services in 2002, where he spent nearly four years. Upon being replaced by the plaintiff in September 2005, he began working in Special Services. (Doc. #35-1 at 4-5, #35-2 at 2.)[6]

In sum, the evidence does not raise a rational inference that the defendant's justification was pretext. The plaintiff's belief that she deserved more deference in light of her three decades of service in the police department is not sufficient to carry her burden of proving intentional discrimination.

---

There is no evidence that the police department adopted this suggestion.

[6]The court may rely on this evidence, which was attached to the defendant's reply brief, because the plaintiff raised the material issue of preferential treatment of Lieutenant Randall in her opposition, did not move for leave to file a sur-reply, and did not claim to have any contrary evidence to introduce. See note 3, supra.

V.   Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is granted.

This is not a recommended ruling.  The parties consented to the exercise of jurisdiction by a magistrate judge, and the case was transferred to the undersigned for all purposes including the entry of judgment on February 23, 2010.  (See doc. #19.)

SO ORDERED at Hartford, Connecticut this 30th day of September, 2011.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge